LEWIS E. MILLS, TRUSTEE, *v.* THE BOARD OF EQUALIZATION
OF THE CITY OF CINCINNATI.

An erroneous valuation for taxes by the assessor is not void, but may be
corrected by the Board of Equalization on appeal to them by the party
aggrieved.

The Auditor will not be enjoined from placing on the duplicate the valua-
tion for taxes of realty returned by the assessor, or the Board of Equaliza-
tion be enjoined from acting thereon, until an appeal from such valuation
has been had to the Board, and their action has been had on such appeal.

This case came on upon the plaintiff's motion for a re-
straining order.

*L. E. Mills*, for plaintiff.

*W. S. Scarborough, County Solicitor*, contra.

STORER, J.    The plaintiff, who is owner, in trust, of several
valuable storehouses and lots, situated in the Second ward of
Cincinnati, complains that Peter Gibson, who has been regu-
larly appointed assessor of real property in that portion of the
city, has appraised the real estate he represents, and returned
the same for taxation at a sum far beyond its real value in
money; that the assessor has disregarded the law which
defines his duties and authorizes him to act; that instead of
ascertaining the real value of the property in money, he has
affixed the price at which it would probably sell upon a
credit of one or two years, thereby greatly increasing the
sum for which the plaintiff can be legally taxed, and impos-
ing upon him a burden he ought not to bear.    The assess-
ment thus made, it is charged, was made under the instruc-
tions of the Auditor, and is admitted, as is said by the as-
sessor, to be opposed to his own opinion of what the true
bases of taxation should be under the statute.    These al-
legations are sustained by the affidavits of the assessor and

the statement under oath of various property holders in the ward, whose lots and buildings have been similarly taxed, the assessor having pursued the same course as to all the real estate in the ward in assessing the plaintiff's property.

The Auditor denies that he gave any other instructions than those he has attached to his answer, and which it is admitted were furnished to the other assessors.

It is further charged that the assessments thus made under the instructions were directly opposed to the requisition of the statute, inasmuch as the land is first valued separate from the improvements; the value of the improvements has been found and added to the appraisement of the land, while the aggregate of both is then made the basis of taxation.

In thus assuming to act, the assessor is charged to have mistaken his duty, imposing a fictitious and oppressive value upon the plaintiff's property, a greater value than it would sell for in cash, or even on a credit.

It is further averred that the defendants, who compose the Board of Equalization, have no power to reduce the assessment, as it was illegal, and therefore void, not being a mere error of opinion on the part of the assessor, but such an excess of power that we must hold him to have acted *ultra vires.*

Upon these facts a restraining order is asked to prevent the Auditor and Board of Equalization from any action upon this assessor's return, as it can not be regarded as the predicate of any further proceeding on their part, either in placing the property on the duplicate, or correcting the assessment itself.

A careful consideration of the allegations in the plaintiff's petition, sustained as they are by the proofs in the case, to our apprehension, presents this single question: Whether the assessment is absolutely void, or is merely erroneous? If the former, the defendants must disregard it; if the latter only, it can be amended by the Board of Equalization in the mode prescribed by the statute.

It is admitted by the counsel for all parties that the as-

sessment of real property can only be made by ascertaining its true value in money—in other words, not what it might bring at auction or at a forced sale, but at what it can fairly be estimated in cash. No special price can be taken into the account on the one hand; nor an unreasonable low estimate on the other.

Hence it is there is confided to the assessor's office a just discretion, the privilege of arriving at his conclusions by comparing one lot by its improvements, in the same locality, with another; its situation, its convenience to business, and in our rapid progress, as a city, not to disregard altogether the elements which may fairly be supposed to enter into the estimation of real estate by those who have especially devoted themselves to its purchase and sale; for thus a conclusion may be reached both just to the state and the property holder.

But in the performance of his duty the officer is not supposed to be always infallibly correct. He may, and probably will, err in the result of his labors, if his acts are to be rigidly examined and determined by every technical requirement of the law, which is merely directory and not, in terms, mandatory. If he is authorized to discharge the duties he has assumed, his subsequent acts which involve calculations connected with sound discretion, or a deviation from a prescribed rule, may be the foundation upon which error may be charged, while the power to perform the act still exists. This is the analogy we may find in every proceeding where jurisdiction is conferred, and there is error only in the discretion.

In the case before us the assessor is clothed with ample power. His election to the office and subsequent qualification by oath are admitted, but it is claimed he had no authority to assess the plaintiff's real estate in any other mode than the statute has provided, and having done so, his assessment is void.

If, however, we regard the assessment as merely representing the opinion of the assessor, and his figures prove

what his valuation really is, it seems to us that it is immaterial, if his assumption of what is the true value can be shown to be excessive, upon whatever basis he made it. The fact exists.

And the same view may be taken of the allegation that the land is valued distinct from the buildings, for we find, although separate appraisements are made, yet the aggregate of both is carried out by the officer in his return, as his estimate of the entire property. We see no objection to such an assessment in matter of form, for it must be admitted that no injury is suffered by the tax-payer, and no advantage is gained by the state, the county, or the city by the process.

We are satisfied that an unequal assessment has been made upon the plaintiff's property, and it is unjust also, as it is greatly above the real value of the property in money; we are also of the opinion the estimate of the assessor ought not to be made the basis of taxation by the Auditor, and did not we believe that the plaintiff has full and adequate remedy by an appeal to the Board of Equalization, we should be disposed to interfere in a summary way to relieve him.

That tribunal was created for the express purpose of equalizing the burdens to be borne by the owners of real estate, as well as to protect the government from loss by inadequate and low valuations. The object to be gained was the correction of errors, mistakes, and omissions on the part of the assessor, and the imperative duty of the board is to examine carefully every return when objection is made, reduce it if they are satisfied it is too high, and increase it if they should find it be too low. The language of the fifty-ninth section of the tax law, S. & C. 1454, is clear and explicit: "They shall raise the valuation of such lots as have been, in their opinion, returned below their true value, and they shall reduce the valuation of such tracts and lots which have been returned above their true value."

The plaintiff may, therefore, have full and adequate relief

from a tribunal fully empowered to grant all he now seeks to accomplish. He does not, therefore, require our aid.

It must be an extreme case to authorize our interference to the extent claimed by the plaintiff, and should we declare the assessment void, we should virtually prevent the collection of any tax whatever. None could be levied until the next year, as there can not be an assessment at any other time than that appointed by law, while the effect would be to disturb and disarrange the whole system of taxation for the present year, a dilemma in which we ought not to place the officers of the county or the city—unless no other alternative is left us.

The taxing power in every government is one of the highest prerogatives of sovereignty. It is essential to its very existence as a state or an ordinary municipality, and burdens are imposed on property by taxation as an equivalent for the protection given to the owner in the enjoyment of what he claims to be his. But the rate of taxation should be equal. To use the language of our State Constitution, " All property must be taxed by a uniform rule ;" and yet it is difficult so to arrange a general system that shall operate in every respect to produce strict uniformity in the varied interests necessarily involved in the assessment of a tax.

While the important object to be attained should be kept in view, the details of any system of taxation can not always, indeed can seldom, be adhered to with strict accuracy; and while the machinery of the system is directed, if not controlled, by men who are not, as a general rule, the clearest headed and wisest, there will be apparent inequality, if not injustice, urged by the property owners against the officer.

Such a result might reasonably be expected, and the wrong, if any, that is done to the individual can only be remedied in the future by the election to office of those who understand their duty, and are not unwilling to perform it.

In the case before us, we believe the assessor honestly felt

he was discharging the requirements of the law, under the instructions of the Auditor, and, as he testifies, the explanations given him personally by that officer. Still he erred, for no such construction of the law could be allowed to the Auditor. The law itself was to the assessor his only guide as to the proper mode of determining the value of real estate for taxation, and he must follow it, or else his estimate should be revised and amended by the Board of Equalization.

The law of May, 1856, S. & C. 1157, does not, we think, apply to the case, as the parties now stand before the court. If the Board of Equalization shall hereafter refuse to afford the relief to which the plaintiff is entitled, he may, if proper ground for our interference shall exist, again invoke our aid.

The prayer for a restraining order is now denied, but the petition will be retained.

A decree, by consent, in favor of the defendants was afterward entered, and the case taken to General Term on error, where the opinion above given was affirmed. An application was made to the Supreme Court for leave to file a petition in error, which was refused.